CHIEF JUSTICE TURNAGE
delivered the Opinion of the Court.
¶ 1 Terry L. Bradley filed this action with the Eleventh Judicial District Court, Flathead County, asking for a declaratory judgment can *158 celling a contract under which he purchased an automobile. The court granted the defendants’ motion for summary judgment. We affirm.
¶2 The issue is whether the District Court erred in granting summary judgment for the defendants and denying Bradley’s motion for summary judgment.
¶3 In 1997, Terry Bradley shopped for a motor vehicle at Eisinger Motors in Kalispell, Montana, and left his name and telephone number with salesman “Geo.” Johnson. Johnson called Rick Muffitt, a salesman at North Country Automotive and Marine, Inc., to inquire whether that dealership had any vehicles meeting Bradley’s wishes. Muffitt told Johnson that North Country had a 1996 GMC Yukon which might interest Bradley. Johnson gave Muffitt Bradley’s telephone number.
¶4 Muffitt called the Bradley home and identified who he was and how he had obtained the Bradleys’ telephone number. Muffitt avers that he identified North Country as his place of employment, although Bradley avers that he did not. Muffitt told Bradley that he had a 1996 GMC Yukon on the sales lot. Bradley invited Muffitt to bring the vehicle to the Bradleys’ home, which Muffitt did.
¶5 Bradley and his wife test-drove the GMC Yukon and decided to buy it. They allowed Muffitt to take their trade-in vehicle back to the dealership to determine its value. Muffitt took the paperwork for the sale, which was prepared at the North Country dealership, back to the Bradleys’ home, where Terry Bradley signed it.
¶6 The Bradleys later contacted North Country regarding options that they wished to have installed on the vehicle. Muffitt swears by affidavit that, at that time, the Bradleys expressed their satisfaction with the GMC Yukon and invited him to stop by their house again.
¶7 The purchase was financed through First Security Bank. The Bradleys made payments of $681.51 per month for two months, and then attempted to cancel the contract. When the defendants did not agree to that, Terry Bradley filed this action requesting a declaratory judgment that the sales transaction was a personal solicitation sale and that North Country’s failure to inform the Bradleys that they had a right to cancel the contract is an unfair and deceptive trade practice.
¶8 Both sides moved for summary judgment. The District Court granted the defendants’ motion, and Bradley appeals.
Discussion
¶9 Did the District Court err in granting summary judgment for the defendants and denying Bradley’s motion for summary judgment?
*159 ¶10 We review appeals from summary judgments de novo. Treichel v. State Farm Mut. Auto. Ins. Co. (1997), 280 Mont. 443, 446, 930 P.2d 661, 663. Like the District Court, we apply the following evaluation, pursuant to Rule 56(c), M.R.Civ.R:
The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law.
Bruner v. Yellowstone County (1995), 272 Mont. 261, 264, 900 P.2d 901, 903 (internal citations omitted). We review the legal determinations made by a district court to ascertain whether the court erred. Bruner, 272 Mont, at 265, 900 P.2d at 903.
¶11 At issue is the applicability to this transaction of Montana’s Personal Solicitation Sales Act, Title 30, Chapter 14, part 5, MCA. The Act protects buyers in “personal solicitation sales” by providing a cooling-off period during which the buyer may choose to cancel such a sale. The Act defines “personal solicitation sales” as
any attempt by a seller who regularly engages in transactions of the same kind to sell goods or services which are primarily for personal, family, or household purposes, when either the seller or a person acting for him contacts the buyer by telephone or in person other than at the place of business of the seller, except:
(a) an attempted sale in which the buyer personally knows the identity of the seller, the name of the business, firm, or organization he represents, and the identity or kinds of goods or services offered for sale;
(b) an attempted sale in which the buyer has initiated the contact with the seller;
(c) an attempted sale of a newspaper subscription in which the seller is a minor engaged in both the delivery and the sale of the newspaper; or
(d) an attempted sale of an insurance policy.
Section 30-14-502(2), MCA.
¶ 12 The District Court determined that the transaction at issue in this case was not a personal solicitation sale. That is the first error alleged by Bradley, who maintains that because North Country was in the business of selling motor vehicles, it qualifies under the above *160 statute as a “seller who regularly engages in transactions of the same kind.”
¶ 13 A fundamental principle of statutory construction is that the intent of the legislature is to be pursued whenever possible. Section 1-2-102, MCA. In determining that intent, a statute which is plain and unambiguous on its face must be applied as written. Connery v. Liberty Northwest Ins. Corp. (1996), 280 Mont. 115, 119, 929 P.2d 222, 225. Legislative history may be considered only when the legislative intent cannot be determined from the statute’s content. Dorn v. Board Of Trustees of Billings School Dist. No. 2 (1983), 203 Mont. 136, 144, 661 P.2d 426, 430.
¶14 The District Court interpreted the words “transactions of the same kind” in § 30-14-502(2), MCA, to refer to transactions as a whole-that is, the place, the mode of contact with the consumer, and the product; not just the type of product sold. Because Bradley presented no evidence that North Country regularly engaged in sales of vehicles by telephone or in person at buyers’ homes, the court ruled that the Personal Solicitation Sales Act did not apply to this sale. The court stated that “[t]here is no indication of an intent by the legislature to address a single instance of telephone or home contact by a regularly established seller of a certain type of goods or services.”
¶15 We agree with the District Court. The plain meaning of the words “regularly engages in transactions of the same kind” logically refers not only to the type of goods sold, but also to other aspects of the transaction; e.g., whether the transaction was a door-to-door or telephone sale. The title of the legislation which became the Act was “An act for the general revisions of laws relating to a three-day cooling off period on door-to-door sales.” “Door-to-door sales” necessarily refers to more than a single transaction at a buyer’s home, and clearly identifies the kind of transactions sought to be regulated under the Act. The words “regularly engages” substantiate the legislature’s intent to limit the statute’s application to only those solicitors who sell their products in this manner on a regular basis.
¶16 We conclude that the Personal Solicitation Sales Act does not apply to a one-time sale by telephone or in person at a buyer’s home. Because Bradley did not bring forth any evidence that North Country regularly attempted sales by telephone or in person other than at its place of business, we agree with the District Court that the Personal Solicitation Sales Act does not apply to this case.
*161 ¶ 17 Bradley also argues that the District Court erred when it determined that because Muffitt identified himself and the business for which he was employed to Bradley, this sale was within the exception to the definition of “personal solicitation sales” set forth at § 30-14-502(2)(a), MCA. Because we have affirmed the District Court’s ruling that the Personal Solicitation Sales Act does not apply to this sale under the court’s first rationale, we need not address this question. Because we determine that judgment for the defendants was correct as a matter of law, we also do not address Bradley’s third argument, that the court should have instead granted his motion for summary judgment.
¶18 We hold that the District Court did not err in granting summary judgment for the defendants and in denying Bradley’s motion for summary judgment. We affirm the decision of the District Court.
JUSTICES GRAY, LEAPHART and DISTRICT JUDGE SHERLOCK, sitting in place of JUSTICE NELSON and DISTRICT JUDGE HENSON, sitting in place of JUSTICE REGNIER concur.